NATIONAL ORGANIZATION FOR the REFORM OF MARIJUANA LAWS (NORML), Plaintiff,

v.

UNITED STATES DEPARTMENT OF STATE et al., Defendants.

Civ. A. No. 78–0428.

United States District Court, District of Columbia.

June 8, 1978.

**1228**

Peter H. Meyers, R. Keith Stroup, Washington, D. C., for plaintiff.

Irwin L. Schroeder, Lois J. Schiffer, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

Plaintiff, the National Organization for the Reform of Marijuana Laws (NORML), a non-profit membership corporation that has for its principal focus the decriminalization of marijuana, has brought this action on behalf of itself and its members against the Department of State, the Agency for International Development (AID), the Drug Enforcement Administration (DEA), and the Department of Agriculture. Plaintiff seeks a declaratory judgment that the defendants are in violation of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, *et seq.*[1] for failing to prepare and consider an environmental impact statement with respect to United States participation in herbicide spraying of marijuana and poppy plants in Mexico.

Plaintiff also seeks an injunction (1) enjoining defendants from obligating or expending any funds, or providing any other support or assistance to the herbicide spraying program in Mexico unless and until they have fully complied with NEPA, (2) directing defendants to inform the Government of Mexico that an environmental impact statement is required before additional United States assistance can be made available, and to use their "best efforts" to persuade the Mexican Government to call a moratorium on the herbicide spraying program until such an impact statement is prepared, and (3) enjoining defendants from providing support or assistance to herbicide spraying programs in any other country until they prepare an environmental impact statement for the program in that country.

This case came before the Court for a hearing on the merits which, with the agreement of counsel for both sides, was advanced and consolidated with the hearing on plaintiff's application for a preliminary injunction under Rule 65(a)(2) of the Federal Rules of Civil Procedure. Jurisdiction of these federal questions is provided by 28 U.S.C. § 1331(a).

### Contentions of the Parties

NORML claims that the defendants are endangering the health of plaintiff's members through their support of and participation in the Mexican herbicide spraying of marijuana and poppy plants. Plaintiff specifically alleges that many NORML members smoke marijuana, or ingest it in food or drink, and that Mexican grown marijuana consumed in this country has been found to contain significant levels of the herbicide paraquat which presents a serious health hazard to the marijuana user. It also claims that NORML members visit Mexico for recreational and professional purposes, and have an interest in insuring that the food and drink they consume in Mexico are free from potentially harmful herbicides; that NORML members have an interest in insuring that agricultural imports, includ-

1. Pub.L. No. 91–190, 83 Stat. 852.

ing fruits, vegetables, and beef, are free from potentially harmful herbicides; and that NORML members who travel in Mexico have a recreational and aesthetic interest in insuring that areas of scenic beauty there are not harmed by herbicide usage.

NORML contends that United States participation in the Mexican spraying program constitutes a "major Federal action[s] significantly affecting the quality of the human environment", and that under Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), an environmental impact statement should have been prepared, circulated, and considered before initiation of the federal action. Plaintiff alleges significant effects of the spraying program both in this country and in Mexico, and, consequently, urges the Court to declare NEPA applicable to United States actions having extraterritorial impacts. It argues that the only remedy which will effectively implement the public policy of NEPA is a restraining order barring continued United States involvement in the spraying operation until an impact statement has been prepared and fully considered.

While NORML remains peculiarly aware of the general criminal status of marijuana usage,[2] it contends that paraquat adulterated marijuana converts an otherwise harmless activity into a serious health hazard for a broad segment of the nation's citizenry. Plaintiff asserts that, "[t]he Defendants' actions are far more 'culpable', and threaten far more serious injury to the public health, safety, and welfare, than the conduct of Plaintiff's members in consuming marijuana."[3]

Defendants take the position that the Mexican herbicide spraying program is just that—a *Mexican* undertaking over which this country exercises minimal influence. They offer that narcotics eradication is of such great importance to the Government of Mexico that that country will continue to

spray marijuana and poppies even if the United States should curtail its assistance. Thus, defendants conclude, plaintiff's alleged injuries will not be redressed by a restraining order, and they urge that an injunction not issue since it would prove a futile exercise of this Court's equitable powers.

Since the filing of this lawsuit on March 13, 1978, defendants have commenced certain activities which, they argue, change the posture of this case so as to effectively render moot plaintiff's cause of action. In conjunction with various other government agencies, defendants are now preparing an environmental impact statement on the effects of the Mexican eradication program in the United States, and are planning to prepare what they term an "environmental analysis" of the program's effects in Mexico. Both studies are estimated by the State Department to be completed by the fall of 1978. Defendants are also now engaged in an expedited evaluation of alternatives to paraquat for use in eradicating Mexican marijuana. Having agreed to prepare impact statements regardless of the outcome of this litigation, they contend that such relief need not be directed by the Court. In this connection, defendants urge the Court not to reach the question of extraterritorial application of NEPA, but simply assume its applicability without deciding the issue.

Defendants also challenge the propriety of NORML's seeking the aid of the Court in furthering an alleged "right" to use marijuana, when its use in this country necessarily involves illegal activity either through sale or possession. Plaintiff, it is suggested, lacks "clean hands" in attempting to enlist the Court's equitable injunctive powers.

Preliminarily though, defendants challenge plaintiff's standing to bring this NEPA action.

---

**2.** Possession of marijuana is a crime in 39 states and the District of Columbia. However, 11 states have passed laws decriminalizing possession of small amounts. In one state, Alaska, possession and use are legal in the privacy of

the home. *Ravin v. State,* 537 P.2d 494 (Alaska 1975).

**3.** Plaintiff's Reply Memorandum, filed May 3, 1978, at 4.

*Standing*

■ The standing challenge is based primarily upon defendants' view that NEPA does not protect illegal conduct; consequently, plaintiff has not shown an Article III injury to a legal right. Succinctly, there is no legally protected right to smoke marijuana which triggers NEPA's requirements or satisfies the Constitutional requisites of Article III.

Though NORML has alleged health, recreational, and informational injuries from defendants' actions, the defendants argue that plaintiff may only assert the marijuana, or health, interests of its members. NORML, however, contends that all three interests are within the zone of protection provided by NEPA.

The Court is of the opinion that defendants' position improperly narrows the scope of NEPA's protections. This Circuit's decisions point towards an expansive view of the types of harm cognizant under NEPA. For example, in *Jones v. District of Columbia Redevelopment Land Agency,* 162 U.S. App.D.C. 366, 499 F.2d 502 (1974) Chief Judge Bazelon explained that:

> The harm against which NEPA's impact statement requirement was directed was not solely or even primarily adverse consequences to the environment; such consequences may ensue despite the fullest compliance. Rather NEPA was intended to ensure that decisions about federal actions would be made only after responsible decision makers had fully adverted to the environmental consequences of the actions, and had decided that the public benefits flowing from the actions outweighed their environmental costs. Thus, the harm with which courts must be concerned in NEPA cases is not, strictly speaking, harm to the environment, but rather the failure of decision makers to take environmental factors into account in the way that NEPA mandates.

*Jones,* 162 U.S.App.D.C. at 376, 499 F.2d at 512.

The situation of the plaintiff organization in *Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission,* 156 U.S.App.D.C. 395, 481 F.2d 1079 (1973) .is not dissimilar to that of NORML. The Scientists' Institute's activities included making available to the public scientific information bearing upon important social issues and thereby stimulating public discussion of public policy questions. NORML appears to be no less a catalyst in its own area of expertise: this nation's marijuana policy.[4]

In *Scientists' Institute* the Court found the plaintiff organization to have a sufficient interest in providing˚public information on a project within its sphere of activity to satisfy NEPA standing. Similarly, here NORML has alleged and shown more than mere "interest in a problem". *See Scientists' Institute,* 156 U.S.App.D.C. at 403, 481 F.2d at 1087 n. 29.

■ NORML and certainly at least some of its members satisfy the "minimal" standing requirements of *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and *United States v. SCRAP,* 412 U.S. 669, 688–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). *See Sierra Club v. Andrus,* —— U.S.App.D.C. —— at ——–——, 581 F.2d 895 at 899–900 (D.C.Cir. 1978). At the very least plaintiff has alleged a sufficient "informational interest" under NEPA. And, once standing is established on at least one ground, plaintiff is entitled to "public interest" standing on other grounds. *Sierra Club v. Adams,* 188 U.S.App.D.C. at ——, ——, 578 F.2d at 389, 392 (D.C.Cir. 1978).

■ Defendants make an alternative attack on NORML's standing, arguing that NORML is unlikely to have its alleged injuries redressed by a favorable decision in this case since, as defendants claim, Mexico will continue spraying marijuana notwithstand-

---

**4.** There can be no question that United States marijuana policy is in a state of flux. The U. S. Senate recently passed a marijuana decriminalization proposal as part of the United States Criminal Code revision, S. 1437. State law, as previously noted, already reflects public policy changes in favor of decriminalization. See Note 2, *supra.*

ing the outcome of this lawsuit. It is, first of all, not clear that there is no chance whatsoever for plaintiff's alleged injury to be remedied. While there is evidence from which the Court may conclude that Mexico will indeed continue its marijuana and poppy eradication efforts with or without this country's assistance,[5] there is also evidence in this record that such unilateral continuation by Mexico may not be entirely possible.[6] In either instance, the Court would be dealing in pure speculation should it reach one conclusion over another. It seems quite possible that if an injunction were forthcoming, at least some measure of NORML's injuries would be redressed since it is reasonable to presume that Mexico would neither be able to continue its program at full strength, nor be willing to abandon it completely. Accordingly, the Court cannot conclude that redress to plaintiff is unlikely enough to foreclose standing.

### The Case on the Merits

Mexico began aerial eradication of marijuana plant and heroin poppy fields in November, 1975, with the assistance of the United States.[7] The United States provides approximately $12 million each year to assist the Mexican operation. This country also supplies aircraft for the identification and eradication of fields, and provides training, technical assistance and aircraft maintenance.

United States participation in the narcotics eradication program is administered primarily by the Department of State. AID helped develop this nation's support program and assisted the Mexican Government in selecting the necessary and appropriate equipment for the project. Until early 1978, DEA provided technical assistance in locating opium, poppy and marijuana fields. By affidavit, the Administrator of DEA states that on March 3, 1978, at the request of Mexico, DEA withdrew all *active* participation in the eradication efforts, and that Mexico is continuing the program independent of any DEA *direct* assistance. He also explains that DEA is planning to train persons not employed by DEA to perform the functions of pilots and spotters to replace the DEA personnel. (Defendants' Exhibit C at 3.) The Department of Agriculture similarly provided technical assistance and evaluation during 1975 and 1976.

Two herbicides are employed in the aerial spraying of poppy and marijuana fields: Paraquat, which has been sprayed primarily on marijuana fields, and 2,4–D which has been used principally on poppy fields. There is, though, evidence to indicate that each chemical has from time to time been used on both types of fields, either intentionally or due to technical limitations when dealing with commingled narcotics fields. (See Plaintiff's Exhibit A.)

The National Environmental Policy Act of 1969 requires that the initiation of all major federal action significantly affecting the quality of the human environment be preceded by the preparation of an environmental impact statement. Without conceding that United States participation in the

---

5. Defendants have filed a letter from the Attorney General of Mexico which confirms that that country intends to continue the spraying program regardless of United States assistance. Defendants' Exhibit E.

6. The letter from the Mexican Attorney General discloses that Mexico "will continue [its] campaign, *to the extent of [its] capacities. . . .*" Defendants' Exhibit E, English translation at 4 (emphasis added). Furthermore, in an August 1976 cable from the U. S. Ambassador to Mexico, Joseph J. Jova, to Secretary of State Henry Kissinger it was reported that "Mission knows of no rpt [repeat] no Mexican official with expertise in all technical aspects of spraying program whom USDA could consult." Plaintiff's Exhibit R.

7. Not unexpectedly, plaintiff's discussion of the herbicide spraying program focuses upon its effects upon marijuana, while defendants emphasize the heroin eradication aspects of the program. It appears, however, that there exists a certain degree of commingling of marijuana and heroin both in connection with the eradication efforts and the agricultural practices of the Mexican farmers. Moreover, for the purposes of this case, the same considerations are applicable under NEPA whether it be marijuana or heroin which is subject to herbicide spraying.

Mexican narcotic eradication spraying program is such a major federal action under NEPA's Section 102(2)(C), 42 U.S.C. § 4332(2)(C), the defendants have here stipulated that an environmental impact statement will be prepared with respect to the effects of that program in the United States. They have also agreed to prepare an "environmental analysis" of those effects in Mexico. Defendants will not, however, cease their participation in the Mexican spraying program until Section 102(2)(C) of NEPA has been fully satisfied.

Plaintiff is less than fully satisfied with the government's recently formulated position, arrived at since the filing of this Complaint. NORML seeks a judicial determination that NEPA *does* apply to this federal action, and, as part of NEPA compliance, a court order, *inter alia,* restraining participation by this country in the spraying program until after an environmental impact statement has undergone full consideration.

The evidence in the record before the Court demonstrates that the defendants have provided, and continue to provide, significant financial aid and other assistance to the Mexican program of aerial spraying of marijuana fields with paraquat pesticide and of poppy fields with 2,4–D pesticide.

Notwithstanding the illegal nature of marijuana, the Office of Drug Abuse Policy disclosed in a Press Release issued by the White House December 9, 1977 that under its direction the National Institute on Drug Abuse would begin studying the potential health hazards associated with paraquat-contaminated marijuana. That Release was accompanied by background information on paraquat which included a public warning that: "Paraquat is highly toxic, can be fatal if swallowed in concentrated form, and has no known antidote." (Plaintiff's Exhibit S at 2.)

Furthermore, the Department of Health, Education and Welfare has issued a public notice about the possible health consequences of using paraquat-adulterated marijuana. HEW has also instructed the Center for Disease Control to collect information on paraquat related illnesses in this country. (*Defendants'* Exhibits D and F.) It therefore appears that at least some executive agencies find an obligation to warn United States citizens of this potential health hazard. It further appears that defendants' failure to prepare an environmental impact statement under NEPA was in conflict with the positions of other equally concerned federal agencies.

■ The Court finds that the participation of the United States in the program is a major federal action significantly affecting the quality of the human environment within the meaning of Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C). *See Citizens Against Toxic Sprays, Inc. v. Bergland,* 428 F.Supp. 908 (D.Or.1977), *Wisconsin v. Butz,* 389 F.Supp. 1065 (E.D.Wis.1975), and *Lee v. Resor,* 348 F.Supp. 389 (M.D.Fla.1972). (In *Bergland* and *Butz* the United States Forest Service prepared environmental impact statements for the aerial spraying of herbicides, including 2,4–D, in connection with that agency's forest management activities. In *Resor* the Army Corps of Engineers was required to prepare an EIS with respect to spraying 2,4–D on river hyacinths.)

Defendants do not contest that there is an impact in this country, and based upon the evidence in this record, the Court will assume that, with respect to at least the effects in the United States, there is no question that an environmental impact statement is mandated by NEPA.

Defendants entreat the Court to assume, without deciding, the applicability of NEPA to the Mexican impact of this country's participation in chemical eradication efforts in Mexico. Yet, such an invitation appears to beg the question.

The extraterritoriality of NEPA remains an open question in this Circuit. The issue was most recently posed by our Court of Appeals in *Sierra Club v. Adams,* —— U.S. App.D.C. ——, 578 F.2d 389 (1978), where the Court had occasion to consider the international scope of NEPA in the context of United States participation in the construction of the Darien Gap portion of the Pan American Highway through parts

of Panama and Columbia. There the Court stated:

> The effect of construction on the Indians, as well as on flora and fauna, *see* note 42 *infra*, also brings into question the applicability of NEPA to United States foreign country projects that produce entirely local environmental impacts, or, as in this case, some impacts which are strictly local and others that also affect the United States. At the direction of our motions panel, both parties submitted supplemental briefs on the question of the applicability of NEPA to construction in Panama. In its response, the Government stated that it "never questioned the applicability of NEPA to the construction of this highway in Panama . . .," but it also intimated that this position might not apply to "purely local concerns (Indians and alternate routes)." Appellees took the position that NEPA does apply to the construction "whether the impact of such construction may occur in the United States, in the countries of Central America, or in both."
>
> In view of the conclusions that we reach in this case, we need only assume, without deciding, that NEPA is fully applicable to construction in Panama. We leave resolution of this important issue to another day.

*Sierra Club v. Adams,* 188 U.S.App.D.C. at ——, 578 F.2d at 389, 392.

Similarly, in view of defendants' willingness to prepare an "environmental analysis" of the Mexico effects of United States support of that nation's narcotics eradication program, together with the EIS required by NEPA as to the impact of that program upon the United States, the Court need not reach the issue and need only assume without deciding, that NEPA is fully applicable to the Mexican herbicide spraying program.

■ Accordingly, the Court will render a declaratory judgment in favor of plaintiff NORML that defendants are in violation of NEPA for failing to prepare, circulate for comment, and consider a detailed environmental impact statement on the United States effects of the spraying program.

Defendants, of course, remain obligated by their own agreement at the hearing to prepare an "environmental analysis" of the program's effects in Mexico, and the Court does not disturb that course of conduct.

### The Remedy Question

The Court now turns to the question whether *vel non*, under the circumstances of this case, to exercise its injunctive powers to restrain United States participation in the Mexican aerial eradication program until the required impact statement has been prepared, circulated, and considered fully.

This Circuit's Court of Appeals recently considered the "particularized analysis" necessitated in balancing the public interest components when determining whether injunctive relief properly lies:

> [A]s this court has noted, "[i]n most cases, . . . it is possible and reasonable for the courts to insist on strict compliance with NEPA, and actions can, consistently with the public interest, be enjoined until such compliance is forthcoming." *Jones v. District of Columbia Redevelopment Land Agency,* 162 U.S.App.D.C. 366, 377, 499 F.2d 502, 513 (1974). However, while there is, in cases of NEPA noncompliance, a "presumption" in favor of injunctive relief, such relief does not follow automatically from every finding of a violation of NEPA. Rather, where courts have enjoined ongoing projects, they have done so primarily to preserve for the relevant decisionmaker the full opportunity to choose among alternatives that is contemplated by NEPA. By maintaining the *status quo,* while additional environmental studies are performed, or additional alternatives are considered, an injunction ensures that there will be at least a "possibility" that the agency will "change its plans in ways of benefit to the environment. It is this possibility that courts should seek to preserve." *Jones v. District of Columbia Redevelopment Land Agency, supra,* 162 U.S.App. D.C. at 377, 499 F.2d at 513; *Realty Income Trust v. Eckerd,* 183 U.S.App.D.C.

426, 435, 564 F.2d 447, 456 (D.C.Cir.1977). More generally, the purpose of equitable relief, in a NEPA case as in any other, is to *remedy* the particular violations that have taken place; accordingly, where an injunction is not required to preserve the decisionmaker's opportunity to choose, an ongoing project should obviously not be enjoined, especially where, as here, there are substantial public interests in the project's continuation. What is called for, in each case, is a "particularized analysis" of the violations that have occurred, of the possibilities for relief, and of any countervailing considerations of public interest. *Id.*

*Alaska v. Andrus,* 188 U.S.App.D.C. —— at ———————, 580 F.2d 465 at 484–485 (D.C. Cir. 1978).

Unfortunately, as is the case with most balancing tests, it is not altogether clear exactly what is to be balanced. However, it does appear that the Court must consider the public's interest in an ongoing endeavor, and credit that interest with substantial weight.

The Court is confronted with an ongoing program aimed at assisting the Government of Mexico in eradicating marijuana and heroin production in that country—a program in which the United States has a definite public policy interest. Here, again the Court is faced with the fact that marijuana and heroin use, through both sale and possession, is, after all, an illegal activity in this country.[8] Added to this is the evidence proffered by the defendants that the program, at least insofar as concerns Mexican action, will proceed even if United States assistance is withdrawn.

■ Here there are two directly conflicting federal policies, each in its own way a competent statement of the public policy as enunciated by the national legislature. On the one hand NEPA demands that federal agencies not rush blindly into major federal actions which significantly impact upon the environment. On the other hand, the criminal laws of Congress are not to be disregarded in the face of environmental concerns.[9] To further complicate the situation, this is a case with strong overtones of foreign policy which cannot be ignored.

■ It is the opinion of this Court that weighing all the considerations, the balance must tilt in favor of withholding the equitable remedy of an injunction.

Justice Marshall has observed that in NEPA cases such as this one, ". . . the courts have had to content themselves with the largely unsatisfactory remedy of enjoining the proposed federal action and ordering the preparation of an adequate impact statement. This remedy is insufficient because, except by deterrence, it does nothing to further early consideration of environmental factors." *Kleppe v. Sierra Club,* 427 U.S. 390, 415, 96 S.Ct. 2718, 2733, 49 L.Ed.2d 576 (1976) (Marshall, J., dissenting in part).

Accordingly, plaintiff's claim for an order restraining the defendants from participating in the Mexican herbicide spraying program will be denied. However, defendants shall still be required forthwith to complete the required environmental impact statement and circulate it for comment and consideration.

■ Two final matters remain for disposition. NORML also seeks a mandatory injunction directing defendants to use their "best efforts" to persuade the Government of Mexico to call a moratorium on the herbicide spraying program until an environmental impact statement is prepared.

---

**8.** While the Court earlier considered this proposition in connection with the standing challenge, now it is considered anew as part of the balancing of the public interest.

**9.** Heroin and marijuana are Schedule I Controlled Substances. Simple possession of any controlled substance is punishable under the Controlled Substances Act, 21 U.S.C. § 844(a), by up to one year imprisonment and a $5000 fine. The manufacture, distribution or possession with intent to manufacture or distribute heroin or marijuana is penalized under 21 U.S.C. § 841(a) by up to 15 years imprisonment and a $25,000 fine, and by up to five years imprisonment and a $15,000 fine, respectively. A second offense operates to double the maximum penalties in each instance.

While defendants, of course, are free to so request of the Mexican Government if they see fit, the relief which plaintiff requests presents a non-justiciable political question beyond the Article III powers of this Court. *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Ordering such relief would infringe upon the President's constitutional authority to conduct foreign relations.

Plaintiff has also requested that defendants be enjoined from providing support or assistance to herbicide spraying programs in any other country until they prepare an environmental impact statement for the program in that country. Yet, there is no support in this record for the allegation that any other countries are now receiving such support. Indeed, *Plaintiff's* Exhibit B, at 2, discloses that Mexico is the only country the United States Government assists in the herbicide spraying of marijuana and poppy fields. There being no dispute on this point, the relief sought will be denied.

## CONCLUSION

Having considered this case on the merits, and based upon the pleadings, memoranda, affidavits and exhibits which the parties have filed with the Court, and counsel having been afforded an opportunity for oral argument, for the reasons stated herein a declaratory judgment will be entered in favor of plaintiff that defendants are in violation of NEPA for failing to prepare, circulate for comment, and consider a detailed environmental impact statement on the effects of defendants' participation in the Mexican aerial narcotics eradication program. Defendants will be directed forthwith to prepare, circulate and consider such an environmental impact statement, and shall include therein the "environmental analysis" of the program's effects in Mexico which the defendants have also proposed, and are preparing. In all other respects relief will be denied plaintiff, and judgment will be entered in favor of defendants.