The NATIONAL ORGANIZATION FOR
THE REFORM OF MARIJUANA
LAWS, Plaintiff,

v.

UNITED STATES DRUG ENFORCE-
MENT ADMINISTRATION, et
al., Defendants.

Civ. A. No. 82–2107.

United States District Court,
District of Columbia.

Aug. 17, 1982.

Kevin B. Zeese, Washington, D. C., for plaintiff.

James T. Draude, Dept. of Justice, Washington, D. C., for defendant.

Janet E. Ferris, Sp. Asst. Atty. Gen., Florida Dept. of Law Enforcement, Tallahassee, Fla., for State of Fla.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The plaintiff, the National Organization for the Reform of Marijuana Laws (NORML),[1] is a non-profit membership organization. It seeks to enjoin the herbicidal spraying of marijuana plants in the State of Florida. NORML alleges in the complaint that the federal defendants, the Drug Enforcement Administration (DEA) and the Environmental Protection Agency (EPA), together with the Florida Department of Law Enforcement (FDLE), have failed to prepare an environmental impact statement (EIS) on the eradication of marijuana with herbicides as required by the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq. NORML further claims that the defendants are violating the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq., because the use of the herbicide paraquat on marijuana crops is a non-approved use under the Act. It contends that any attempt to use paraquat in the State of Florida without first complying with statutory requirements and safeguards is violative of the Acts.

This proceeding was filed on July 28, 1982. At an earlier hearing on NORML's application for a temporary restraining order, all parties agreed to an expedited briefing schedule which would permit the Court to hear and consider full oral argument on the merits. The Court's ruling would then be final and subject to appeal. The State of Florida agreed, with the understanding, however, that its challenges to jurisdiction and venue would be preserved. The parties presented their oral arguments to the Court on August 11, 1982.

The plaintiff has moved for a declaratory judgment and seeks a preliminary injunction barring further planning, expenditure of funds or any other assistance for the spraying of paraquat until the requirements of the NEPA and the FIFRA are fulfilled. The FDLE has moved to dismiss or, in the alternative, for summary judgment. The federal defendants have moved for summary judgment.

Upon consideration of all the legal memoranda, affidavits, and oral argument of counsel, the Court denies the plaintiff's application for a preliminary injunction and determines that the defendants' motions for summary judgment should be granted and that this proceeding should be dismissed.

---

1. NORML's complaint names the Chevron Chemical Company as an "involuntary plaintiff," pursuant to F.R.Civ.P. 19(a). The company has not, however, participated in these proceedings in any way. A party may invoke the involuntary plaintiff provision of Rule 19 only if the party sought to be joined is beyond the jurisdiction of the court and is notified of the action but refuses to join, and only where the party seeking the joinder is entitled to use the non-party's name to prosecute the action. *Eikel v. States Marine Lines, Inc.,* 473 F.2d 959 (5th Cir. 1973). NORML has made no showing that those prerequisites are satisfied in this case. This Court, therefore, orders *sua sponte* the dismissal of Chevron from this action.

## Factual Background

The factual background of this case may be briefly stated. Paraquat is a pesticide used to control annual broadleafed weeds, such as marijuana. When sprayed on marijuana, paraquat destroys the plants within 24 to 72 hours, turning the plants yellowish and making them brittle and unsalable. If, however, the plants are harvested immediately after spraying and removed from sunlight, the marijuana remains saleable, although some residue of the paraquat may remain, potentially causing health hazards to marijuana consumers.

In 1981, the FDLE, concerned about extensive illegal cultivation of marijuana in the state, selected paraquat as an herbicide effective in marijuana eradication. Florida and the DEA have, through aerial surveying, located over a hundred marijuana fields. The FDLE plans, within the next few weeks, to spray paraquat on some of the fields with backpack sprayers and trucks.

The extent of federal involvement in this program is, as will be seen below, of central significance in the resolution of the legal issues posed by defendants' motions. The DEA has provided financial and technical assistance to the State of Florida for marijuana law enforcement. Such assistance has included training in aerial spotting techniques and financial assistance for aerial spotting equipment. The DEA has also shared technical information on herbicides. In fiscal year 1981, the DEA disbursed $14,000 to the State of Florida for marijuana law enforcement. In fiscal year 1982, DEA has budgeted $60,000 to assist in marijuana law enforcement of which approximately $30,000 has been authorized for expenditure to date. However, none of this money has been used for herbicidal spraying, and DEA personnel would not be involved in the actual spraying. FDLE officials have stated, in affidavits submitted in this action, that the State intends to eradicate marijuana with paraquat without regard to whether the DEA continues to provide financial and technical assistance to the state for other aspects of marijuana law enforcement.

Even though the DEA itself does not conduct or finance herbicidal eradication, DEA officials have prepared an assessment of the environmental effect of use of paraquat on marijuana. The environmental assessment was prepared to determine whether DEA's involvement in the paraquat spraying program is a "major federal action significantly affecting the quality of the human environment" that requires preparation of an EIS under the NEPA. The DEA Administrator approved the environmental assessment on July 10, 1981, and concluded that DEA is insufficiently involved in the spraying program to require preparation of an EIS. The Administrator also concluded that the spraying of paraquat will not have a significant effect on the quality of the human environment.

## Legal Analysis

The defendants' arguments are two-fold. First, they argue that the planned spraying program is a state, rather than federal, action. As a result, the FDLE contends that (a) the Eleventh Amendment serves as a bar to this suit, (b) subject matter jurisdiction is lacking, (c) venue is lacking in the District of Columbia. All defendants further contend that because there is minimal federal involvement, the requirements of the NEPA do not apply here. Second, the defendants argue that even if this Court has jurisdiction and venue over the defendants and even if a cause of action is stated under the NEPA, the defendants have fully complied with the requirements of the NEPA.[2]

### A.

The defendants' Eleventh Amendment, jurisdictional and venue arguments

---

**2.** The federal defendants also suggest, but "preserve ... for appellate review," the question whether NORML has standing in this case. This Court agrees with Judge Waddy in *NORML v. U. S. Department of State*, 452 F.Supp. 1226 (D.D.C.1978), which held that NORML, a non-profit organization devoted to the decriminalization of marijuana, had standing to raise similar claims.

need not long detain us. It is well established that the Eleventh Amendment does not bar a suit which seeks prospective equitable, rather than retrospective monetary, relief. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ The FDLE's jurisdictional claim is that because it is a state agency, subject matter jurisdiction is lacking. The argument is frivolous. Even if NORML's complaint does not state a ground for relief under the NEPA, dismissal would properly be on the merits, not for want of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Only if a federal claim is wholly "insubstantial" and clearly "immaterial" may a suit be dismissed for want of jurisdiction. *Id.* That is not the case here.

■ Finally, the FDLE asserts that venue under 28 U.S.C. § 1392(b) is improper in the District of Columbia because the cause of action did not arise here. However, if NORML is correct in asserting that the federal and state governments jointly planned the paraquat spraying in Florida, then the DEA's decision not to prepare an EIS arose within the District of Columbia, the location of the DEA headquarters. Venue, therefore, is appropriate in this district.

### B.

A far more troublesome question is whether the federal involvement in the challenged program is sufficient to trigger the NEPA requirements. The NEPA requires federal agencies to provide a detailed EIS on "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Thus, only "federal" actions are subject to the NEPA. The defendants assert that the paraquat spraying program is being planned and will be conducted by the state, not the federal, government, and the NEPA therefore does not apply to this project.

Our Court of Appeals has provided guidelines in the determination of what constitutes "federal" action under the NEPA. In *Defenders of Wildlife v. Andrus*, 627 F.2d 1238 (D.C.Cir.1980), the court stated that mere "federal approval" of another party's action does not make that action "federal" unless the federal government undertakes some "overt act" in furtherance of the action. *Id.* at 1244. Thus, the requirements of the NEPA are triggered when, for example, "a federal agency approves a lease of land to private parties, grants licenses and permits to private parties, or approves and funds state highway projects." *Id.* at 1245, quoting *Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission*, 481 F.2d 1079, 1088–89 (D.C.Cir.1973). The court in *Defenders of Wildlife*, quoting from the environmental law treatise written by Professor Rodgers, also set forth a requirement of federal "influence or control":

> [T]he distinguishing feature of "federal" involvement is the ability to influence or control the outcome in material respects. The EIS process is supposed to inform the decisionmaker. This presupposes he has judgment to exercise. Cases finding "federal" action emphasize authority to exercise discretion over the outcome. 627 F.2d at 1245, quoting W. Rodgers, *Environmental Law* 763 (1977).

The Ninth Circuit has also provided guidance on this question with a thorough survey of the case law in *State of Alaska v. Andrus*, 591 F.2d 537 (9th Cir. 1979). There, the court noted that "[w]here federal funding is not present, this court has generally been unwilling to impose the NEPA requirement." *Id.* at 541. Courts have, however, found federal action even if federal funding is absent "where federal agencies issue permits, approve plans, or give other 'go-ahead' signals." *Id.* at 540.

In this case, federal funding, federal control, and federal "go-ahead" actions are lacking. DEA's involvement in the spraying program consists, as NORML itself describes it, of providing both the "impetus" behind the program and the technical ex-

pertise. NORML relies on statements in the environmental assessment to prove its claim—for instance, that the DEA is "encouraging nationwide eradication programs" and that Florida is a desirable "test case" for the development of herbicidal spraying programs. But this sort of federal involvement is not of the magnitude required under *Defenders of Wildlife* and *State of Alaska.*

The state and federal officials in their affidavits stress the lack of federal involvement. DEA official Walter E. Sears states that Florida officials proposed the idea of using paraquat and made the decision to do so. Although the DEA provides technical advice to the FDLE and other state law enforcement agencies, Sears alleges in his affidavit that the local officials decide whether their resources and conditions warrant herbicidal eradication. And, although the DEA has provided funding for the aerial surveillance, the state officials, according to Sears, determine whether the marijuana fields discovered by the surveillance should be eradicated by use of paraquat or by other methods, such as manual destruction or burning. Sears states that no federal monies are employed for the actual spraying of the paraquat.[3]

Similarly, FDLE official Robert L. Edwards states in his affidavit that "[t]here is no federal participation—funding, manpower, technical assistance or otherwise—involved in the 1982 herbicidal eradication program. FDLE exercises control over the program, and is solely responsible for spraying criteria and for implementing the plan for selection of the spraying sites." He adds that "FDLE, not the federal government or its agencies, controls the herbicidal eradication program and is the lead agency in the project" and that "no federal government employees are being, or will be, directed by FDLE to locate, secure or destroy marijuana under the herbicidal eradication program."[4]

Thus, the record in this case indicates that although there is considerable federal-state cooperation in efforts to control marijuana production, the federal government neither funds nor controls the herbicidal eradication program in Florida. NEPA, therefore, does not provide a cause of action.

### C.

Even if the federal-state cooperation were sufficient to trigger the NEPA requirements, the DEA reasonably determined that the paraquat spraying program will not "significantly affect the quality of the human environment." NORML argues that the spraying of paraquat will pose health dangers to persons who smoke or ingest contaminated marijuana, to persons, vegetation, and wildlife in the spraying area, and to law enforcement personnel involved in the eradication. It principally relies on a decision by Judge Joseph Waddy of this Court in *National Organization for Reform of Marijuana Laws v. United States,* 452 F.Supp. 1226 (D.D.C.1978). Judge Waddy held that federal agencies had violated the NEPA by failing to prepare an EIS on United States assistance given the Mexican government for an herbicidal spraying program in that country. In that case, as here, NORML complained that "paraquat adulterated marijuana converts an otherwise harmless activity [i.e., the smoking or ingestion of marijuana] into a serious health hazard for a broad segment of the nation's citizenry." *Id.* at 1229.

The record in this case, however, suggests that the health effects which troubled Judge Waddy will not be present here. There are several crucial distinctions between the two programs. Mexico eradicated marijuana by aerial spraying of paraquat with no law enforcement presence on

---

**3.** Affidavit of Walter E. Sears, Special Agent Staff Coordinator, Cannabis Investigation Section, Office of Operations, D. E. A., dated August 9, 1982 at ¶¶ 1, 3, 4, 8.

**4.** Affidavit of Robert L. Edwards, Director of the Division of Local Law Enforcement Assistance of the Florida Department of Law Enforcement, filed August 4, 1982 at ¶ 1; Supplemental Affidavit filed August 9, 1982 at ¶¶ 2, 4, 6, 8, 10.

the ground. As a result, some sprayed marijuana was harvested shortly after the spraying and marketed in this country. Florida, however, will spray the crops manually and will guard the marijuana fields after spraying, thereby ensuring that the marijuana is not harvested.[5] The contaminated marijuana, therefore, will not enter into the marijuana market.

When the Court asked NORML counsel at oral argument about the significance of these control measures, he responded that NORML was principally concerned that the measures would not be followed in future cases. Nothing in the record suggests, however, that the Florida officials will not proceed in a manner fully consistent with the environmental assessment, the affidavits, and the exhibits submitted in this case. The adequacy of an agency's compliance with the NEPA "must be determined without reference to *possible* future action." *Sierra Club v. Morton*, 510 F.2d 813, 824 (5th Cir. 1975) (emphasis in original). If it is found at a later time that Florida authorities are failing to follow the outlined procedures, then appropriate remedies could be sought and made available in the proper forum.

NORML's other claims about the environmental effects of the spraying program are also baseless. Paraquat is a registered herbicide in wide use throughout the United States.[6] There is no evidence that the spraying of marijuana will affect man, fish, wildlife and vegetation any differently than do other, relatively commonplace, herbicidal eradication programs.[7] Similarly, this Court has no reason to doubt that the Florida law enforcement personnel will use the paraquat other than in accordance with the label restrictions,[8] thereby minimizing any danger to themselves.[9]

In sum, NORML's complaint fails because the NEPA does not apply to a primarily state action and, even if it did apply, the NEPA requirements have been fulfilled.[10]

### Conclusion

For the foregoing reasons, the plaintiff's motion for a preliminary injunction is denied and the defendants' motions for summary judgment are granted. An appropriate Order accompanies this Memorandum Opinion.

---

**5.** First Edwards Affidavit at ¶ 3; Sears Affidavit at ¶ 9.

**6.** Affidavit of Thomas E. Adamczyk, Head of the Product Management Section, Herbicide and Fungicide Branch, Registration Division, Office of Pesticide Programs, EPA, dated August 4, 1982 at ¶ 7.

**7.** According to the FDLE's Exhibit A, entitled "Operation Plan for Herbicidal Eradication of Domestic Marijuana," approximately 61,000 pounds of paraquat are sprayed in Florida annually and it is "one of the most used [sic] chemicals in agriculture."

**8.** First Edwards Affidavit at ¶ 4.

**9.** This Court also notes the problem of NORML's standing to assert a claim on behalf of Florida law enforcement personnel.

**10.** The FIFRA claim does not warrant extensive discussion. NORML asserts that the EPA has violated the FIFRA because paraquat is not registered for use on marijuana and the EPA has failed to take enforcement action to prevent its spraying. However, the defendants' uncontroverted statement of facts provides that paraquat is, in fact, registered for use to control annual broadleaf weeds and marijuana is such a weed. Although NORML also claims that EPA has not established a safe tolerance level for paraquat on marijuana, the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*, only requires that such a level be established for foods, and marijuana is not a food crop. Finally, although plaintiff alleges to the contrary, the uncontroverted facts show that the EPA has established work safety rules for the use of paraquat to eradicate marijuana.