**NORTH GEORGIA C.O.P.S., et al.**

v.

**Ronald REAGAN, et al.**

**No. C83–1710A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 20, 1984.

David F. Walbert, Paul D. Hermann, Pope, Hermann & Kellogg, Atlanta, Ga., for plaintiffs.

James T. Draude, Dept. of Justice, Robert T. Richardson, Deputy Chief Counsel, Drug Enforcement Adm., Lawrence Cook, Environmental Protection Agency, Washington, D.C., Curtis Anderson, Asst. U.S. Atty., Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled action is before the Court on the plaintiffs' motion for attorneys' fees. Because of the complicated nature of this case, a detailed discussion of the facts will be presented.

### Factual Background

In 1978, in response to the increasing illegal cultivation of marijuana on both public and private lands in this country, the Drug Enforcement Administration (DEA) initiated the Domestic Marijuana Eradication Program. This program, which involved cooperation with the states, employed various methods to destroy illegal marijuana including manual destruction, burning, and spraying with herbicides. In 1981, the DEA prepared an environmental assessment on the use of paraquat to destroy marijuana and concluded that the use of paraquat did not significantly affect the quality of the environment. Because of this conclusion, the DEA decided that it did not have to file an environmental impact statement (EIS) as required by the National Environmental Policy Act of 1969, 42 U.S.C. § 4321, *et seq.* (NEPA). NEPA requires federal agencies to prepare an EIS for all "major Federal actions significantly affecting the environment." 42 U.S.C. § 4332(2)(C). The DEA's conclusion that the spraying of paraquat was not such an action was affirmed by a district court in

National Organization for the Reform of Marijuana Laws (NORML) v. United States Drug Enforcement Administration (DEA), 545 F.Supp. 981 (D.D.C.1982).

In 1982, the U.S. Forest Service asked DEA to help it combat a large increase in illegal marijuana cultivation in the National Forests. In response to this request, the DEA decided to use herbicides to eradicate illegal marijuana during the 1983 harvest season. The DEA prepared another environmental assessment and again concluded that the use of herbicides on marijuana would not significantly affect the environment and therefore DEA did not prepare an EIS. As part of this plan to eradicate marijuana, the DEA decided to spray paraquat on illegal marijuana in the Chattahoochee National Forest. This spraying occurred on August 12, 1983.

The plaintiffs in this case, numerous citizens of North Georgia and various citizen groups, challenged the DEA's use of paraquat in North Georgia. On August 15, 1983, this Court issued a temporary restraining order enjoining the DEA from further spraying in Georgia. In their four-count complaint, the plaintiffs alleged due process violations; breach of contract; failure of the DEA to comply with NEPA; and various common law torts.

On September 1, 1983, the Sierra Club and other concerned groups filed suit in the District of Columbia seeking to enjoin the DEA from spraying paraquat anywhere in the United States until it prepared an EIS. On September 13, the District of Columbia District Court issued a Temporary Restraining Order to that effect. *See Sierra Club v. Mullen,* Civil Action No. 83–2592 (D.D.C. Sept. 13, 1983). Because of this temporary restraining order, the DEA concluded that any further spraying during the 1983 harvest season was precluded. In light of the Court's decision,[1] the DEA decided to prepare an EIS on the use of paraquat to eradicate illegal marijuana on federal lands. Because of this decision, the parties stipulated that Count III of the

---

**1.** There is a factual dispute as to whether this decision was also prompted by the lawsuit filed in this Court. For the purposes of this order, this Court need not resolve that issue.

plaintiffs' complaint, the NEPA claim, should be dismissed as moot. In addition, the plaintiffs voluntarily dismissed the other three counts of their complaint.

The plaintiffs now ask this Court to award them attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). The defendants argue that the plaintiffs are not entitled to fees and expenses because they are not prevailing parties and because the defendants' position was substantially justified. This Court need not address the question of whether these plaintiffs were prevailing parties because this Court holds that the defendants' position was substantially justified and, therefore, the plaintiffs' motion for fees and expenses must be denied.

### Discussion
#### 1) THE EAJA

The EAJA provides for attorneys' fees in suits by or against the United States under certain limited circumstances. The purpose of the EAJA is to "diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action." *Foley Construction Co. v. U.S. Army Corps of Engineers,* 716 F.2d 1202 (8th Cir.1983). The plaintiffs in this case claim attorneys' fees under 28 U.S.C. § 2412(d)(1)(A) which provides:

> [A] Court shall award to a prevailing party other than the United States fees and other expenses awarded pursuant to subsection (a) … in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified.

Federal courts have generally agreed that substantial justification is essentially a test of reasonableness. *Foley* at 1204. *S & H Riggers Erectors, Inc. v. O.S.H.R.C.,* 672 F.2d 426 (5th Cir. Unit B 1982). Furthermore, the burden of showing substantial justification rests with the Government. *S & H Riggers* at 430. This burden, however, is not insurmountable:

The standard … should not be read to raise a presumption that the Government's position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, 1980 U.S.Code Cong. & Ad.News 4953 at 4990. Basically, the Government must show that "its case had a reasonable basis both in law and fact." *S & H Riggers* at 430.

The Eleventh Circuit has held that in cases arising under the EAJA plaintiffs can recover only those fees reasonably incurred in connection with claims they prevailed upon and not for claims which they lost or abandoned. *Matthews v. United States,* 713 F.2d 677, 684 (11th Cir.1983). The plaintiffs in the present controversy voluntarily dismissed all of their claims except their allegation that the DEA violated the NEPA by not filing an EIS. The parties stipulated that this claim was rendered moot and, thus, it was dismissed. The question before this Court, therefore, is whether the DEA's position that it need not file an EIS was substantially justified.[2]

#### 2) The NEPA

The NEPA requires federal agencies to prepare an EIS for all major actions that significantly affect the environment. These agency determinations are reviewed by courts under a reasonableness standard. *Sierra Club v. Hassell,* 636 F.2d 1095 (5th Cir. Unit B, 1981). The court should review the agency's decision to see whether it adequately considered the values set forth in the NEPA and the potential environmental effects of the plan in question. If the agency reasonably concluded that an EIS was not required, its determination should be upheld. *Id.* at 1097–1098.

The DEA has presented this Court with enough evidence to support its position that it was substantially justified in not preparing an EIS for the paraquat spraying. Pa-

---

2. Because the plaintiffs did not prevail on any of their other claims, this Court need not decide whether or not the Government's position relating to those claims was substantially justified.

raquat is registered for use in the United States and is regularly applied to food crop fields. The EPA estimated that over one million pounds of paraquat were used in the United States in 1974 alone. *See* defendants' appendix at 91. In addition, paraquat is widely used in Georgia. *Id.* at 5, 28. The National Pesticide Monitoring Program has not shown paraquat residues in plants, soil, water or wildlife. *Id.* at 76, 83.

Under the NEPA, courts must review the procedures used by the agency in determining that an EIS is or is not necessary. The DEA did prepare an environmental assessment to determine whether the use of paraquat on marijuana would cause significant environmental impact. This assessment incorporated various guidelines that the DEA prepared in June, 1983. These guidelines evaluated various methods of eradicating marijuana including the use of paraquat. The guidelines show that extensive research was conducted concerning the technology for applying various herbicides and on methods relating to their safe use. The assessment specifically addressed possible problems of drift to non-target areas and adopted several precautions to avoid this danger. In addition, the assessment provided for a site specific analysis to determine whether proposed spraying sites met the criteria established by the DEA to avoid adverse environmental impact. In fact, in August, 1983, Forest Service personnel familiar with the Chattahoochee National Forest examined the site to make sure that it was acceptable for the spraying of paraquat. And, the DEA secured the target site prior to spraying to make sure that no one was present during and after the spraying. In sum, the DEA's assessment appears to be a thorough examination of both the effects of paraquat spraying and methods to make such spraying as safe as possible. Based to a large extent on this assessment, the DEA concluded that an EIS was not necessary.

The DEA's decision in the present case is also supported by the case of *NORML v.*

*DEA,* 545 F.Supp. 981 (D.D.C.1982). In *NORML,* the court held that the DEA reasonably determined that it did not have to file an EIS with respect to paraquat spraying in Florida.[3] The court noted that "[p]araquat is a registered herbicide in wide use throughout the United States. There is no evidence that the spraying of marijuana will affect man, fish, wildlife and vegetation any differently than do other, relatively commonplace, herbicidal eradication programs." *Id.* at 986.

In the present controversy, the DEA relies on its environmental assessment and the *NORML* case to support its argument that it reasonably believed that an EIS was not necessary under the NEPA guidelines. In light of the DEA's research and prior case law, this Court holds that the DEA was substantially justified in its position. This Court reaches this conclusion based to some extent on the factors enumerated in *Spencer v. N.L.R.B.,* 712 F.2d 539 (D.C.Cir. 1983). The *Spencer* court listed three criteria that should be used when resolving fee disputes under the EAJA. These factors are the following:

(A) Clarity of the governing law;

(B) Foreseeable length and complexity of the litigation;

(C) Consistency of the Government's position.

This Court will discuss each of these factors.

A) *Clarity of the Governing Law*

This factor is important because if the law clearly dictates certain results, the Government should not persist in litigation opposing that result. In the present case, however, the DEA had good cause to believe that their position was in conformity with applicable law because it had previously prevailed in a lawsuit concerning similar issues.[4] In addition, the relevant stan-

---

**3.** The Court reached this issue although it also held that there was not enough federal involve-

ment in the program to implicate the NEPA.

dard that the DEA was operating under, namely reasonableness, is a standard that is often difficult to apply. Therefore, this factor strongly supports the DEA's contention that its position was substantially justified.

### B) *Foreseeable Length and Complexity of Litigation*

■ This factor is important because if the litigation is complex and likely to be drawn out, private parties might hesitate before bringing the lawsuit. Thus, in cases where substantial investments of effort and money are required, the Government should be obliged to make an especially strong showing that its position was justified. *Spencer* at 560. *See also S & H Riggers, supra,* 672 F.2d at 430. This factor is difficult to apply to this case because it was rendered moot rather quickly. There is no reason to conclude, however, that this lawsuit would have been significantly more protracted and complex than other lawsuits.

### C) *Consistency of the Government's Position*

This factor is important because the Government should treat all people equally and should not single out individuals who deviate from customary practices. The DEA has consistently argued for a number of years that it need not file an EIS related to its domestic spraying of paraquat. Thus, this factor also supports the DEA's position in this case.

■ In sum, this Court finds that the DEA had substantial reason to believe that its decision not to file an EIS relating to paraquat spraying of marijuana was reasonable. The DEA had conducted extensive research into this area and had prevailed in a prior lawsuit that raised similar issues. Accordingly, the plaintiffs' motion for attorneys' fees and costs under the EAJA is hereby DENIED because the

Government's position was substantially justified.

SO ORDERED.

---

4. This Court recognizes that there may be times when a position is not substantially justified under the EAJA even if it is consistent with prior case law.